UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDY WIMBERLY,

       Plaintiff,

v.                       CASE No. 8:12-CV-1427-T-17TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

       Defendant.

_____

### REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of

her claim for supplemental security income payments.[2] Because the decision

of the Commissioner of Social Security is supported by substantial evidence

and contains no reversible error, I recommend that the decision be affirmed.

I.

      The plaintiff, who was forty-six years old at the time of the

administrative hearing and who has a ninth grade education, has worked as

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

a cashier and housekeeper (Tr. 32, 170). She filed a claim for supplemental security income payments, alleging that she became disabled due to hepatitis C and scoliosis (Tr. 136). The claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "amphetamine dependence, bilateral wrist entrapment, carpal tunnel syndrome, degenerative disc disease of the cervical and lumbar spine, cervical spinal stenosis, hepatitis C, major depressive disorder, and scoliosis of the cervical and thoracolumbar regions" (Tr. 18). The law judge concluded that, with these impairments, the plaintiff can perform light work with the following restrictions (Tr. 20):

> The claimant can only occasionally stoop and cannot squat, kneel, or crawl. Additionally, the claimant can never climb ladders, ropes or scaffolds and can only occasionally climb stairs. The claimant would also require a sit/stand option and cannot reach above her shoulder. Finally, the claimant is limited to simple, 1 to 4 step work.

The law judge decided that these limitations prevented the plaintiff from returning to her past relevant work (Tr. 23). However, based upon the

testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as ticket seller, parking lot cashier, and photograph finisher (Tr. 24). The law judge therefore ruled that the plaintiff was not disabled (Tr. 25). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

A. The plaintiff contends first that the law judge failed in his duty to develop a full and fair record because he did not request opinions from two of the plaintiff's doctors, Dr. Taha Dias and Dr. Saqib Khan (Doc. 14, pp. 8-10). I have recently rejected this same argument as meritless. Samra v. Colvin, Case No. 8:12-CV-1320-T-23TGW (Doc. 15, pp. 6-7). The facts of this case do not make the argument any more persuasive.

As Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) – the case cited by the plaintiff – makes clear, the law judge's duty concerns developing the medical record for the twelve months prior to the application. There is no assertion that that duty was violated here.

Rather, the plaintiff contends that Dr. Dias and Dr. Khan should have been contacted because there was no opinion from a treating physician

regarding the plaintiff's capabilities (Doc. 14, pp. 9-10).  However, the plaintiff "bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." Ellison v. Barnhart, supra, 355 F.3d at 1276; Doughty v. Apfel, 245 F.3d 1274, 1276 (11th Cir. 2001); 20 C.F.R. 416.912(a),(c). Significantly, the plaintiff was represented by an attorney during the administrative proceedings (Tr. 32).  Under these circumstances, the burden was on the plaintiff and her lawyer, and not the law judge, to obtain an opinion from Drs. Dias and Khan. Osborn v. Barnhart, 194 Fed. Appx. 654, 668-69 (11th Cir. 2006).

Moreover, a remand is not warranted due to a failure to develop the record unless the plaintiff can demonstrate evidentiary gaps in the record which result in "unfairness or clear prejudice." Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991). The plaintiff did not demonstrate that the law judge failed to develop the record, much less that such a failure resulted in evidentiary gaps amounting to clear prejudice.

Here, the plaintiff had physical and mental consultative examinations.  Further, the treating doctors' notes were in the record.

Accordingly, the law judge could reasonably conclude that he had sufficient information to make a determination of whether the plaintiff was disabled.

In addition, the plaintiff has not proffered any opinion from either doctor regarding the plaintiff's functional limitations. Consequently, it is speculation to think that they would opine that the plaintiff had greater functional limitations than found by the law judge.

Furthermore, the regulations do not support the plaintiff's contention that the law judge was required to contact the treating sources. In support of her contention, the plaintiff cites 20 C.F.R. 416.912(e) (2011), which was deleted from the regulations in 2012 (Doc. 14, p. 9).[3] That regulation stated that medical sources must be recontacted when "the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 416.912(e)(1) (2011). However, as the Commissioner persuasively argues, there are no conflicts or ambiguities that

---

[3]The plaintiff acknowledges that the regulations were amended in 2012, but notes that her "discussion references and applies to the version of the regulations in effect when the ALJ adjudicated Plaintiff's disability claim" (Doc. 14, p. 9 n.1).

would cause the law judge to recontact Dr. Dias or Dr. Khan (Doc. 15, p. 10).

Consequently, even under the old regulation, the law judge was not required to obtain an opinion from the doctors.

Regardless, the amended rule regarding recontacting the plaintiff's physicians would apply to this court's review. The regulations now pertinently provide that, if there is an inconsistency or insufficiency in the evidence, the law judge can consider various ways to resolve that problem, which, at the law judge's choice, may, or may not, involve recontacting a doctor. 20 C.F.R. 416.920b(c)(1).

The Supreme Court has recently reiterated that the general rule is that an appellate court must apply the law in effect at the time it renders its decision. Henderson v. United States, __ U.S. __, 133 S.Ct. 1121, 1126 (2013). The plaintiff has certainly not suggested any reason why the general rule should not apply here (see Doc. 14, p. 9 n.1). Moreover, the Commissioner has cogently explained why the new regulation should be applied in this decision. Thus, it makes no sense to remand based on the notion that under the old regulation the law judge was required to contact the

doctor only to have the law judge on remand exercise his broad discretion to decide not to recontact a doctor.

For these reasons, the contention that the law judge erred because he did not contact Dr. Dias and Dr. Khan for an opinion is unavailing.

B. The plaintiff next argues that the law judge erred by affording "little weight" to the opinion of Mary Tyree, a physician's assistant (Doc. 14, pp. 11-14). This argument is without merit.

Tyree completed a Residual Functional Capacity Questionnaire on October 21, 2010, noting that she had treated the plaintiff monthly for a period of five months (Tr. 326-27). Tyree diagnosed the plaintiff with sciatica, scoliosis, cervical degenerative disc disease, major depressive disorder, spinal stenosis cervical, and cervicalgia (Tr. 326). Tyree indicated, in essence, that the plaintiff was not capable of substantial gainful activity.

The law judge considered this opinion, but discounted it. In this regard, the law judge stated (Tr. 22):

> As for the opinion evidence, little weight is given to the physical residual functional capacity assessment offered by Mary Tyre[e] dated October 21, 2010. Although her opinion must be

considered, the undersigned notes that Mary Tyre[e] is not a doctor, but a physician's assistant. Moreover, her treatment notes do not support the severity of the limitations suggested in the residual functional capacity assessment. When the claimant was initially seen on May 5, 2010 and then on August 11, 2010, only a few months prior to the assessment, a review of systems and examination revealed a normal back, unremarkable extremities, no limitation in motion in the musculoskeletal system, no muscle or joint pain, no muscle weakness, and no neck, back, or shoulder pain. Although records from September 14, 2010 revealed degenerative disc disease of the cervical spine, cervical scoliosis and spinal stenosis, Ms. Tyre[e] reported "no" limitation in motion with regard to the musculoskeletal system and no muscle weakness. At the time, Ms. Tyre[e] did not report with limitations regarding physical exertion, postural activities, sitting, standing, or walking. Moreover, there is little or nothing in Ms. Tyre[e]'s records suggesting decreased grip strength or limitations in fine manipulation. Again, it is noted that on September 14, 2010 and on October 19, 2010, the claimant reportedly had no muscle weakness, and her extremities were "unremarkable". Lastly, Ms. Tyre[e]'s residual functional capacity assessment is completely inconsistent with the consultative examiner's report which revealed "normal" physical consultative examination (Exhibits 4F, 11F, 12F, 13F, and 15F).

This explanation provides good cause for discounting the opinion of this

medical source, especially considering that the law judge was not required to

give the opinion significant weight.    See 20 C.F.R. 416.913(a), (d)(1) (physician's assistant is excluded from the list of "acceptable medical sources" whose opinions are to be considered in determining the existence of an impairment).

The plaintiff contends that, contrary to the law judge's determination, Tyree's opinion is consistent with her treatment notes (Doc. 14, p. 13). Thus, the plaintiff points to Tyree's records indicating issues with the plaintiff "want[ing] to be alone and ... sleeping her life away" and pain that continues without relief from tramadol (id.; see Tr. 299, 337). However, this evidence primarily consists of the plaintiff's subjective complaints, rather than Tyree's independent assessments of the plaintiff's functioning and limitations. Moreover, Tyree opined extreme limitations and the law judge could reasonably conclude that the notes do not support such limitations.

In further support of her contention, the plaintiff states that Tyree's physical examinations of the plaintiff "revealed mild scoliosis and right sacroiliac joint tenderness to palpation, and positive straight leg raise on the right side," and Tyree prescribed Hydrocet, Doxepin, and Metoclopramide HCL (Doc. 14, p. 13). In order to prevail, however, the plaintiff must show

that she had functional limitations from her conditions that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11ᵗʰ Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11ᵗʰ Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11ᵗʰ Cir. 2005); McCruter v. Bowen, supra. The findings mentioned by the plaintiff clearly did not compel the law judge to accept Tyree's extreme limitations. Adefemi v. Ashcroft, supra.

Similarly, the plaintiff asserts that Tyree's opinion "is consistent with and supported by the other evidence of record" (Doc. 14, p. 14). As indicated, however, it is not enough simply to show that Tyree's opinion is consistent with, or supported by, other evidence; the plaintiff must show that the evidence compels the law judge to accept Tyree's opinion. That showing cannot be made by the plaintiff's reference to the results and findings of a cervical spine x-ray, an MRI, and a nerve conduction study. In August 2010,

the plaintiff's cervical spine x-ray revealed "[a]dvanced degenerative intervertebral disc space changes ... at C5-C6 with cervical scoliosis," and Dr. Anthony T. Rosa "suspect[ed] underlying spinal stenosis at this level" (Tr. 363). On December 20, 2010, an MRI showed scoliosis of the thoracolumbar spine; L4-5 disc dehydration and broad-based central disc protrusion; and L4-5 and L5-S1 facet arthropathy (Tr. 371). Finally, an upper extremity nerve conduction study found latencies of the bilateral median motor and sensory nerves (Tr. 369). None of these reports demonstrates that the plaintiff has any functional limitations beyond the law judge's residual functional capacity. See Moore v. Barnhart, supra, 405 F.3d at 1213 n.6; McCruter v. Bowen, supra.

C. As a third issue, the plaintiff challenges the law judge's credibility determination (Doc. 14, pp. 14-17). This contention is patently meritless since the law judge provided ample basis for discounting the plaintiff's subjective complaints.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry

v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 21). Moreover, he set out the appropriate standard (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed the plaintiff's testimony in his decision, and he specifically noted the plaintiff's allegations of "being sick at her stomach due to hepatitis C"; neck, hip, and back pain; functional limitations; and depression (Tr. 21). After considering the plaintiff's testimony, along with the objective medical evidence, the law judge restricted the plaintiff to light work activity with postural limitations, a sit/stand option, and a limitation to performing one to four step tasks (Tr. 20).

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 21-22):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of the claimant's overall allegations, the undersigned does not find them credible. From the

outset, the claimant's credibility is undermined by her criminal history of grand theft. Additionally, the undersigned notes that the claimant's work history, evidenced by the earnings records, hardly lends itself to the claimant's credibility. The undersigned also notes that the claimant was receiving unemployment benefits after the alleged onset date. While not dispositive of the claimant's ability to work, it further diminishes her credibility considering that she reported being ready, willing, and able to work (Fla. Stat. 443.036 and 443.091 (2010)). Also noted is that the claimant's subjective reports have been inconsistent. As an example, the claimant reportedly admitted to the consultative examiner on August 10, 2009 that she was able to do "all" activities of daily living without any problems. However, shortly thereafter on September 29, 2009, the claimant indicated in the function report that the only household chore she was able to perform was washing her own clothes. Additionally, when asked what she was unable to do because of her impairments that she was previously able to do, the claimant responded, "pretty much anything". As a final credibility factor, it cannot be ignored that lab work dated December 13, 2010 revealed evidence of methamphetamine. For these reasons, to the extent that the claimant has alleged such symptoms as would prevent her from performing within the residual functional capacity outlined above, the undersigned finds such allegations not credible (Exhibits 2D, 3D, 15E, 4F, and 15F).

This explanation is sufficient to discount the plaintiff's complaints of incapacitating pain. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

The plaintiff challenges the law judge's reliance on her statement to a consultative examiner, Dr. Morris Kutner, that "[s]he is able to do all of her activities of daily living without any problems" (Doc. 14, pp. 15-16; see Tr. 238). However, it is clearly proper for the law judge to consider activities of daily living in assessing the plaintiff's credibility. Macia v. Bowen, 829 F.2d 1009, 1011-12 (11th Cir. 1987); Couch v. Astrue, 267 Fed. Appx. 853, 856 (11th Cir. 2008). In fact, the regulations provide that daily activities are to be considered in determining the credibility of the plaintiff's subjective complaints. 20 C.F.R. 416.929(c)(3). Thus, the law judge properly considered the plaintiff's statement to Dr. Kutner in determining her credibility.

The plaintiff asserts that Dr. Kutner's report is an "isolated inconsistency" (Doc. 14, p. 15). The law judge, however, could reasonably conclude in assessing the plaintiff's credibility that the inconsistency was significant. Moreover, on February 24, 2009, less than two weeks prior to the

plaintiff's alleged disability onset date of March 5, 2009, Bartow Regional Medical Center's psychosocial evaluation of the plaintiff revealed that she "can perform all activities of daily living without assistance" (Tr. 252). Further, in September 2009, the plaintiff reported that she is capable of driving for thirty minutes (Tr. 185). On October 13, 2009, licensed psychologist Steven K. Abraham noted that the plaintiff uses the computer; performs light cleaning, but no vacuuming; cooks simple meals; and attends to her own personal care (Tr. 266).

The plaintiff also challenges the law judge's finding that "the only side effect from medications alleged by the claimant at hearing was having an allergic reaction to Wellbutrin, which has been discontinued" (Doc. 14, p. 16; see Tr. 21). In this respect, the plaintiff argues that the law judge failed to consider the statement in Tyree's Residual Functional Capacity Questionnaire that the plaintiff's medication side effect of drowsiness "may impact [the plaintiff's] capacity for work" (Doc. 14, p. 16; see Tr. 326). As previously explained, the law judge had a reasonable basis for discounting Tyree's opinion. In all events, the law judge correctly stated the plaintiff's testimony that she had no side effects from medication with the one exception

of Wellbutrin, which was discontinued (Tr. 49-50, 50-51). Therefore, the plaintiff's apparent reliance on medication side-effects is meritless.

The plaintiff also takes issue with the law judge's consideration in the credibility assessment of her receipt of unemployment benefits, arguing that her receipt of unemployment benefits does not disqualify her from eligibility for Social Security benefits (Doc. 14, p. 16). However, the law judge did not indicate that it did (Tr. 21). Rather, as evidenced by the discussion above, it was only one factor in the law judge's detailed credibility analysis.

Furthermore, the law judge could reasonably conclude that the plaintiff's receipt of unemployment benefits is inconsistent with an application for disability benefits. Thus, as indicated, the law judge noted that, in receiving unemployment benefits, the plaintiff "reported being ready, willing, and able to work" (id.). See Fla. Stat. §443.091(1)(d); Torres v. Florida Unemployment Appeals Commission, 983 So.2d 10 (Fla. App. 2008).

In addition, the plaintiff attacks the law judge's conclusion that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent

with the above residual functional capacity assessment" as erroneous and improper because it implies that the law judge first determined the plaintiff's residual functional capacity and then assessed her credibility (Doc. 14, pp. 16-17; see Tr. 21). However, the law judge plainly stated that in determining the plaintiff's residual functional capacity, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of" the regulations and Social Security Rulings regarding credibility determinations (Tr. 21). In other words, the law judge assessed the plaintiff's credibility in making his determination of the plaintiff's residual functional capacity; he did not first make the residual functional capacity finding, and then assess the plaintiff's credibility.

In his credibility finding the law judge said that "it cannot be ignored that lab work dated December 13, 2010 revealed evidence of methamphetamine." The significance of that with respect to the plaintiff's credibility is that the law judge called the lab report showing methamphetamine use to the plaintiff's attention and, under oath, she denied any knowledge of that drug use (Tr. 37).

In sum, the plaintiff's argument that the law judge's credibility finding was inadequate is baseless. The law judge properly applied the Eleventh Circuit pain standard, and based on that standard, made a reasonable decision to discount the plaintiff's subjective testimony, articulating, in persuasive detail, his reasons for doing so.

D. As her final argument, the plaintiff asserts that "[t]he ALJ's Step 5 determination is unsupported by substantial evidence" (Doc. 14, p. 17). More particularly, the plaintiff complains that the law judge failed to pose a complete hypothetical question to the vocational expert.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security Admin., 496 F.3d 1253, 1270 (11th Cir. 2007), quoting Wilson v. Barnhart, supra, 284 F.3d at 1227. However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The plaintiff seems to contend that the law judge's hypothetical question failed to incorporate limitations set forth by Tyree (Doc. 14, p. 18). However, as indicated, the law judge reasonably discounted Tyree's opinion. Therefore, those discounted limitations did not need to be included in the hypothetical question.

Moreover, the hypothetical question is not deficient as long as it corresponds to the residual functional capacity. Here, the residual functional capacity clearly matches the hypothetical question that the law judge posed to the vocational expert (compare Tr. 20 with 53-54). Consequently, the hypothetical question is not flawed, and the Commissioner met his burden of establishing that there is other work in the national economy that the plaintiff can perform.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain any reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: APRIL 29, 2013

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).